## STREET v. SHIPOWNERS' ASS'N OF THE PACIFIC COAST et al.

(Circuit Court of Appeals, Ninth Circuit.    June 9, 1924.)

No. 4173.

**1. Courts ⊚⇒96(1)—Determination of Supreme Court is law of case on transfer to Circuit Court of Appeals.**

Determination of Supreme Court that no constitutional provisions were violated became law of the case on transfer to Circuit Court of Appeals.

**2. Injunction ⊚⇒114(2)—Seamen ⊚⇒5, 6—Seaman cannot enjoin employers from requiring seamen to register and take turn for employment according to number; shipping commissioner's services are not exclusive.**

A seaman, who has not sought or been refused employment, is not entitled to enjoin' two associations of shipowners controlling employment of all seamen on Pacific Coast·from compelling all seamen desiring employment to register and take numbers, and take their turns for employment according to such numbers; services of shipping commissioner, under Shipping Commissioners Act (Act July 7, 1872) not being exclusive.

Appeal from the District Court of the United States for the Third Division of the Northern District of California.

Suit in equity by Alfred Street, suing on behalf of himself and all other seamen engaged in interstate and foreign commerce by sea on vessels flying the flag of, and engaged in merchant service of the United States, and sailing to and from ports on the Pacific Coast of the United States of America, against the Shipowners' Association of the Pacific Coast and another.    Decree for defendants, and plaintiff appealed to the Supreme Court, which transferred the case to the Circuit Court of Appeals.    Affirmed.

H. W. Hutton, of San Francisco, Cal., for appellant.

McCutchen, Olney, Mannon & Greene and W. F. Sullivan, all of San Francisco, Cal., for appellees.

Before GILBERT, MORROW, and RUDKIN, Circuit Judges.

MORROW, Circuit Judge.    Appellant (plaintiff below) alleges in his complaint that he is a citizen of the United States, residing in the state of California, and a seaman employed upon vessels carrying passengers and cargo between ports on the Pacific Coast and between such ports and foreign ports; that plaintiff is associated by and through an unincorporated association of persons called International Seamen's Union of America, with over 10,000 persons working as seamen on such vessels; that the number of his associates is so large that it is impossible to join them all as plaintiffs in his complaint, so he brings this action on his own behalf and in behalf of all such seamen.

It is alleged that appellees (defendants below) are the Shipowners' Association of the Pacific Coast and the Pacific American Steamship Association; that the Shipowners' Association of the Pacific Coast is a California corporation, having its place of business in San Francisco; that it is a membership corporation, composed of every person, firm, corporation, or association owning or acting as managing owner

⊚⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

of every vessel engaged in interstate and foreign commerce, documented in the different offices of the different collectors of United States customs on the Pacific Coast; that the Pacific American Steamship Association also has its place of business in San Francisco, and is a voluntary unincorporated association of individuals and corporations owning and operating vessels flying the American flag and engaged in the merchant service between Pacific Coast ports and foreign ports; that these two corporations collectively operate or control every vessel engaged in the merchant service between such ports, and collectively employ all seamen engaged in that service.

It is further alleged that on January 1, 1922, defendants combined to restrain the freedom of this plaintiff and all other seamen engaged in such interstate and foreign trade, and to that end established and now maintain an office in San Francisco and other ports and places on the Pacific Coast, and as a condition of employment compel all seamen to register and take a number, and take turns for employment according to such number, and to take and carry a registration number, and this is, in effect, a certificate of registration. This certificate the seaman, according to the complaint, is required to deliver to the master when he signs the shipping articles. Upon his discharge he receives it back, so that it operates as a certificate of discharge as well. In the book is also written the man's place of birth, age, height, weight, the color of his hair and eyes, his complexion, his rating, his previous experience, his previous employment, and in it also appears his photograph.

Plaintiff claims that these regulations prevent seamen of good qualifications who are well known from obtaining employment at once; that the said matters are regulations of commerce among the several states and of foreign nations, in violation of the provisions of subdivision 3 of section 8, article 1, of the Constitution of the United States, and have been fully provided for by the Congress of the United States and the Act of Congress of June 7, 1872 (17 Stat. 262), commonly known as the Shipping Commissioners Act, and the acts amendatory thereto; that plaintiff refuses to engage in such commerce thereunder, and is suffering loss and damage because he cannot obtain employment without obeying such rules and regulations, and defendants threaten to, and will continue to, enforce said rules and regulations, unless restrained by the court.

The defendants interposed a motion to dismiss the bill of complaint on the ground that it did not state facts sufficient to constitute a cause of action. The motion was granted by the court on the grounds stated in its opinion, in substance that: (1) The Shipping Commissioners Act neither provides nor contemplates compulsory service or employment. (2) The case as pleaded does not fall within the reach of the prohibitions of the Anti-Trust Law. (3) The plaintiff is not shown to have any standing entitling him to seek in court the general relief for which he prays. (4) Nor does he connect himself with the rule of practice of which he complains.

[1] The plaintiff thereupon took an appeal direct to the Supreme Court of the United States. 263 U. S. 334, 44 Sup. Ct. 119, 68 L.

Ed. ——. In the petition for the order allowing the appeal he stated that the questions arising upon said appeal involved both the construction and the application of the Constitution of the United States. In the assignment of errors he specified, among other particulars, that the court erred in not finding and deciding that plaintiff's constitutional rights were violated by defendants' rules of employment, the compliance with which by him was a prerequisite to his engaging in interstate and foreign commerce; that the court erred in not holding that the rules prescribed by the defendants, the compliance with which by plaintiff was necessary to enable him to sell his labor and engage in interstate and foreign commerce, were a taking of plaintiff's labor, to wit, his property, without due process of law; and that the rules were in violation of the Constitution of the United States.

The Supreme Court, after stating the case as set out in the bill of complaint, referred to section 238 of the Judicial Code (Comp. St. § 1215), providing:

"That appeals and writs of error may be taken from the District Courts * * * direct to the Supreme Court" in certain enumerated cases, namely, when "the jurisdiction of the [District] Court is in issue; * * * in prize causes; in any case that involves the construction or application of the Constitution of the United States; in any case in which the constitutionality of any law of the United States or the validity or construction of any treaty made under its authority is drawn in question; and in any case in which the constitution or law of a state is claimed to be in contravention of the Constitution of the United States."

The court held that this case falls within none of the enumerated cases, with the explanation that this elimination of constitutional questions applied, "whether the regulations of the associations be regarded as an exercise of the power which, it is contended, Congress alone possesses, or which has been conferred upon the Shipping Commission, or be regarded as violations of the Anti-Trust Law." The court, in Williamson v. United States, 207 U. S. 425, 432, 28 Sup. Ct. 163, 165 (52 L. Ed. 278), had held:

"If there be a constitutional question adequate to the exercise of jurisdiction, the duty exists to review the whole case."

The court thus disposes of all questions in this case relating to the construction and application of the Constitution of the United States in the various relations in which it has been brought into this controversy by the bill of complaint. This decision is the law of the case, and a judgment binding upon this court. It follows that the refusal of the Supreme Court to exercise jurisdiction in this case and review the whole case was because it determined that no constitutional question was involved, and that the regulations of the defendant associations could not be regarded as an exercise of the power which Congress alone possesses, or which had been conferred upon the Shipping Commission, nor could they be regarded as violations of the Anti-Trust Law. The court further determined that, if the plaintiff had received a justiciable injury from the regulation which the judgment of the District Court did not recognize, the review of that decision must be through this court, to which the case was accordingly transferred in

compliance with section 238 of the Judicial Code, as amended (42 Stat. 837 [Comp. St. Ann. Supp. 1923, § 1215a]).

[2] The plaintiff's claim of a justiciable injury, as stated in the complaint and heretofore referred to, is in substance the alleged combination on the part of the defendants to restrain the freedom of·the plaintiff and all other seamen on the Pacific Coast to engage in interstate and foreign commerce by compelling all seamen desiring to engage in such interstate and foreign trade and commerce to register and take a number, and take his turn for employment according to such number, which frequently prevents seamen of good qualifications and well known from obtaining employment at once, when, owing to their being well known among the masters and other officers of the vessels engaged in the trade aforesaid, and owing to their good qualifications as seamen, they could and would obtain work at once, and as a condition of such employment they also compel all seamen desiring to engage in the trade and commerce aforesaid to take and carry a book which plaintiff describes as a continuous discharge book, and which it appears will, when in use, contain particulars relating to a certificate of discharge and the identification of the individual carrying the book.

Plaintiff alleges that the said regulations are humiliating to all seamen, and many of the best seamen refuse to abide by them and are leaving the seafaring calling, and plaintiff refuses to engage in such commerce thereunder, and is suffering loss and damage because he cannot obtain employment without obeying such rules and regulations. There is no allegation in the complaint that plaintiff has ever applied for employment and been refused, and no allegation that plaintiff has ever suffered or will suffer any specific loss or damage whatever by reason of the regulation or acts of the defendants. The relief sought by the bill of complaint is a permanent injunction that the defendants be enjoined and restrained from requiring any seaman to either register in the said office (defendants' office) or carry or purchase the book complained of as a prerequisite to employment, or to obey any of the rules complained of as such prerequisite to obtaining employment in the interstate and foreign commerce mentioned.

There is no complaint that the regulations are unfair or discriminatory as between seamen seeking employment, or that directly or indirectly the acts of the defendants result in any discrimination against the plaintiff or those whom he claims to represent. The whole complaint is that the seamen desiring such employment are required to register and take a number, and take their turn for employment according to such number. This regulation seems to be fair and reasonable and in the interest of a square deal. A similar system obtains in one form or another in many public or semipublic activities. In elections provisions for registration of voters are made in many, if not all, the states, for the purpose of requiring persons who are electors and who desire to vote to show that they have the necessary qualifications, by requiring registration as a condition precedent to the right of such electors to exercise the privilege of voting. Bergevin v. Curtz, 127 Cal. 86, 88, 59 Pac. 312. We are not aware that any court has held that any citizen has suffered a justiciable injury by reason of such a regu-

lation, nor are we aware that taking turn at a post office or theater window, or in a bread line, where food is being distributed to men, women, and children requiring such relief, has been held a just cause of complaint.

Plaintiff insists, however, that the regulation is un-American. We think, on the contrary, that it is peculiarly American, and well adapted for the regulation of the business of shipping seamen. We agree with the court below that the services of the shipping commissioner under the Shipping Commissioners Act "is not exclusive. Such bureaus may be maintained by either seamen or employers independently, and may render material assistance without impinging on either the letter or the spirit of the statute." The complaint presents a case, therefore, in which there are a number of objections to the granting of an injunction against the acts of the defendants.

The decision of the Supreme Court in McCabe v. Atchison, Topeka & Santa Fé Ry. Co., 235 U. S. 151, 162, 35 Sup. Ct. 69, 71 (59 L. Ed. 169), is a case in point. The court there said:

"It is an elementary principle that, in order to justify the granting of this extraordinary relief, the complainant's need of it, and the absence of an adequate remedy at law, must clearly appear. The complainant cannot succeed because some one else may be hurt. Nor does it make any difference that other persons, who may be injured, are persons of the same race or occupation. It is the fact, clearly established, of injury to the complainant—not to others—which justifies judicial intervention. Williams v. Hagood, 98 U. S. 72, 74, 75; Virginia Coupon Cases, 114 U. S. 325, 328, 329; Tyler v. Judges, 179 U. S. 405, 406; Turpin v. Lemon, 187 U. S. 51, 60; Davis & Farnum v. Los Angeles, 189 U. S. 207, 220; Hooker v. Burr, 194 U. S. 415, 419; Braxton County Court v. West Virginia, 208 U. S. 192, 197; Collins v Texas, 223 U. S. 288, 295, 296. * * * The desire to obtain a sweeping injunction cannot be accepted as a substitute for compliance with the general rule that the complainant must present facts sufficient to show that his individual need requires the remedy for which he asks."

We say here, as the court did there:

"The bill is wholly destitute of any sufficient ground for injunction and unless we are to ignore settled principles governing equitable relief, the decree must be affirmed."

The decree of the District Court in this case is accordingly affirmed.

GILBERT, Circuit Judge, concurs in the result.